UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

ALRELIO EVANS,

          Plaintiff,                         Case No. 1:23-cv-373

v.                                           Honorable Jane M. Beckering

J. ATEARN et al.,

          Defendants.
_____/

## OPINION DENYING LEAVE
## TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff seeks leave to proceed *in forma pauperis*. (ECF No. 2.) Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $402.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[1] This fee must be paid within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff fails to pay the fee, the Court will order that this case be dismissed without prejudice. Even if the case is dismissed, Plaintiff must pay the $402.00 filing fees in accordance with *In re Alea*, 286 F.3d 378, 380–81 (6th Cir. 2002).

---

[1] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $52.00. *Id.* § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule. The miscellaneous administrative fee, however, "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

## Discussion

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Evans v. Frias*, No. 1:20-cv-803 (W.D. Mich. Oct. 23, 2020); *Evans v. Brege*, No. 1:20-cv-833 (W.D. Mich. Sept. 25, 2020); *Evans v. Brege*, No. 1:19-cv-1083 (W.D. Mich. Jan. 22, 2020); *Evans v. Capello*, No. 2:12-cv-135 (W.D. Mich. July 16, 2013). All of Plaintiff's dismissals were entered after enactment of the PLRA on April 26, 1996. Plaintiff also has been denied leave to proceed *in forma pauperis* on the basis of the three-strikes rule in three recent cases. *See Evans v. Houghton*, No. 1:23-cv-307 (W.D. Mich. May 3, 2023); *Evans v. Tinerella*, No. 1:23-cv-345 (W.D. Mich. Apr. 17, 2023); *Evans v. Otterbein-Garcia*, No. 1:23-cv-281 (W.D. Mich. Mar. 29, 2023).

Moreover, Plaintiff's allegations do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf.* [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).
>
> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x

3

at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

In Plaintiff's complaint, he sues the following Bellamy Creek Correctional Facility (IBC) officials: Unit Chief J. Atearn, Warden Matthew Macauley, Deputy Warden R. Brokaw, Assistant Deputy Warden B. Hadden, Residential Unit Manager B. Addis, and Prison Counselor Adam Houghton. (Compl., ECF No. 1, PageID.1.) Plaintiff also sues the following Ionia Correctional Facility (ICF) officials and medical staff: Warden John Davids, Deputy Warden Unknown Party #1, Assistant Deputy Warden J. Dunigan, Assistant Deputy Warden Unknown Bonn, Residential Unit Manager Unknown Luther, Prison Counselor Unknown Simon, Psychiatrist Unknown Saad, Psychologist Michelle Norton, Unit Chief David Maranka, and Social Worder Unknown Bookie. (*Id.*) Additionally, Plaintiff sues Michigan Department of Corrections (MDOC) Director Heidi Washington, MDOC Deputy Director Jeremy Bush, MDOC Employee Unknown Party #2, and Mental Health Rights Specialist Sara Heydens. (*Id.*)

Plaintiff alleges that Defendants Atearn, Macauley, Brokaw, Hadden, Addis, and Houghton "held [the] (SCC) Security Classification Committee at IBC on 7-12-22 outside of Plaintiff's presence and chose to refer [him] to the 'Start (SHU) Program' at ICF level 5." (*Id.*, PageID.15.) Plaintiff states that on September 23, 2022, he "was sent to a higher security level at ICF for Start/SHU and spent over 7 days in temporary segregation due to [a] lack of bed space in the Start Unit." (*Id.*) Plaintiff contends that he "suffered from weight loss and delirum [sic] from

4

hunger strikes in protest of being denied mental health treatment and being sent to the Start Program." (*Id.*) Further, Plaintiff alleges that on October 31, 2022, "Defendant Unknown" denied Plaintiff's request "to order a Secure Pak," which "consists of the same items as the prison store," such as "hygiene [items], medication, shower shoes or dietary supplements." (*Id.*, PageID.14.) Additionally, Plaintiff alleges that on November 6, 2022, Defendants Davids, Unknown Party #1, Dunigan, Bonn, Luther, Simon, Saad, Norton, Maranka, Bookie, Washington, Bush, and Heydens "were notified that [Plaintiff] was in temp[orary] seg[regation] past 7 days and was mentally ill," and he "explained that he experienced increased depression, anxiety, post-traumatic slave syndrome, . . . post-traumatic stress disorder, psychosis, claustrophobia, suicidal ideation and paranoia due to prolonged solitary confinement." (*Id.*, PageID.15.)

Further, Plaintiff alleges that "mental health staff and [the] SCC refuse to hold a treatment team meeting and refer [him] to [a residential treatment program] and release him to [general population]." (*Id.*, PageID.16.) Plaintiff also alleges that "24 hour lock-down in the Start Program ha[s] been detrimental to [his] mental health." (*Id.*) Plaintiff states that he "believe[s] this treatment has been in retaliation for grievances at IBC [and] for reporting the assault by Tinerella [and] Rubley[2] and involvement with the National Appellate Clinic." (*Id.*)

As an initial matter, with respect to the IBC Defendants, when Plaintiff filed his complaint, he was incarcerated at ICF, not IBC. (*See id.*, PageID.8.) Plaintiff does not allege that any of the IBC Defendants were responsible for Plaintiff's conditions of confinement or treatment at the time that he filed the complaint. Therefore, the IBC Defendants cannot provide Plaintiff with any relief

---

[2] In Plaintiff's complaint, he states that prior to the July 12, 2022, SCC meeting at IBC, Plaintiff had been involved in an incident with Correctional Officer Tinerella (not a party) "for allegedly assaulting C/O Tinerella by 'spitting' on his uniform, which wasn't true." (Compl., ECF No. 1, PageID.15.) In his complaint, Plaintiff does not explain what occurred with Rubley.

5

that would alleviate any serious risk of physical injury because, at the time that Plaintiff filed his complaint, the IBC Defendants were not responsible for Plaintiff's incarceration or mental health care. *See Day v. Maynard*, 200 F.3d 665, 667 (10th Cir. 1999) (holding that a prisoner does not meet the imminent-danger exception when he is no longer facing risk from the defendants he sues, because he has since been transferred to a different prison).

Further, the Court notes that Plaintiff does not specifically allege that he was in danger of imminent physical injury when he filed his complaint; however, his conclusory allegations that he "suffered from weight loss and delirum [sic] from hunger strikes in protest of being denied mental health treatment and being sent to the Start Program," that he has "experienced increased depression, anxiety, post-traumatic slave syndrome, . . . post-traumatic stress disorder, psychosis, claustrophobia, suicidal ideation and paranoia due to prolonged solitary confinement" and that "24 hour lock-down in the Start Program ha[s] been detrimental to [his] mental health" have a suggestion of danger of serious physical injury. (Compl., ECF No. 1, PageID.15, 16.) As discussed above, a prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Vandiver*, 727 F.3d at 585. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Here, Plaintiff's allegations of imminent danger are vague and conclusory. Plaintiff alleges that on November 6, 2022, Defendants Davids, Unknown Party #1, Dunigan, Bonn, Luther, Simon, Saad, Norton, Maranka, Bookie, Washington, Bush, and Heydens "were notified that [Plaintiff] was in temp[orary] seg[regation] past 7 days and was mentally ill," and he "explained that he experienced increased depression, anxiety, post-traumatic slave syndrome, . . . post-traumatic

6

stress disorder, psychosis, claustrophobia, suicidal ideation and paranoia due to prolonged solitary confinement." (Compl., ECF No. 1, PageID.15.) Although Plaintiff alleges that he experienced these mental health-related conditions in the past, based on the facts alleged in the complaint, the specific nature of Plaintiff's confinement when he filed his complaint is unclear. Thus, Plaintiff has failed to allege sufficient facts to show that, at the time he filed his complaint, he was experiencing the mental health-related conditions listed above. Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity. Furthermore, with respect to Plaintiff's assertion that he had "weight loss and delirum [sic] from hunger strikes," Plaintiff does not allege that he was engaged in a hunger strike at the time that he filed his complaint, and he does not allege that any of the named Defendants were aware that he had engaged in the hunger strikes. (*Id.*) Instead, it appears that Plaintiff engaged in these hunger strikes in the past, and "[a]llegations of past dangers are insufficient to invoke the exception." *Taylor*, 508 F. App'x at 492. Moreover, many courts have found that a prisoner "cannot create an imminent danger to avoid the three strikes provision of the PLRA." *Lewis v. California*, No. 1:22-cv-01036-ADA-HBK (PC), 2022 WL 7099716, at *4 (E.D. Cal. Oct. 12, 2022) (citing cases in support, and noting that "even if Plaintiff was still on a hunger strike, Plaintiff voluntarily commenced his hunger strike").

Plaintiff also alleges that "mental health staff and [the] SCC refuse to hold a treatment team meeting and refer [him] to [a residential treatment program] and release him to [general population]." (Compl., ECF No. 1, PageID.16.) Plaintiff's vague assertion of withheld treatment is insufficient to show imminent danger. *See, e.g.*, *White v. Colorado,* 157 F.3d 1226, 1232 (10th Cir.1998) (finding that vague and conclusory assertions regarding withheld medical treatment were insufficient to satisfy the imminent danger standard). Moreover, Plaintiff does not identify which Defendants, if any, are the "mental health staff" and SCC members who are involved in this

refusal to refer him to a residential treatment program. (*See* Compl., ECF No. 1, PageID.16); *see also Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citations omitted) ("Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for [the alleged constitutional violation].").

Under these circumstances, Plaintiff has failed to allege sufficient facts to show that he is in imminent danger from any of the named Defendants. *See Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) (seminal case, holding that there be some nexus between the imminent danger alleged by the prisoner and the legal claims asserted in his complaint). Although the Sixth Circuit has not yet specifically addressed whether the imminent-danger exception requires a nexus between the danger and the allegations of the complaint, *see Vandiver*, 727 F.3d at 588 (declining to reach issue), this Court concurs with the uniform opinion of all seven circuits that have addressed the issue: some nexus between the imminent danger and the claims raised is required in order to protect the meaning of the entire provision. This nexus requirement does not add a judicially created element to the statute. Instead, as the *Pettus* court recognized, a reading of the statute that incorporates a nexus rule flows from the fundamental rule of statutory construction requiring that a statute be read as a whole. *Pettus*, 554 F.3d at 297. That rule of construction has been regularly repeated by the Supreme Court:

> The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. . . . It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also Clark v. Rameker*, 573 U.S. 122, 131 (2014) (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)).

An equally fundamental canon of statutory interpretation is that exceptions to a general rule must be read narrowly. *See Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) ("In construing provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."). And from this last canon arises the related principle that exceptions must not be interpreted so broadly as to swallow the rule. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009) (rejecting an interpretation of a statutory exception that "would swallow the rule").

As applied to § 1915(g), the imminent-danger exception must be read in light of the strong general thrust of the PLRA, which was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton*, 106 F.3d at 1286. In addition, § 1915(g) itself states that "*[i]n no event* shall a prisoner bring a civil action or appeal . . ." if he has three strikes, unless his complaint alleges facts that fall within the narrow exception in issue. 28 U.S.C. § 1915(g) (emphasis added); *Pettus*, 554 U.S. at 297. Interpreting the statute without some link between the imminent danger alleged and the redress sought would cause the exception to swallow the rule, permitting a prisoner to file as many lawsuits as he wishes on any subject—as long as he can state that he is in imminent danger from something, even if that something is unrelated to his claims and unrelated to the named defendants. *See Pettus*, 554 F.3d at 297; *Pinson*, 964 F.3d at 71. Such a reading of the statute would be inconsistent with the general rule of statutory construction, which requires that exceptions to a rule be read narrowly, so as not to undermine the general rule. *Clark*, 489 U.S. at 739; 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47.11 at 246–47 (6th ed.

9

2000) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than exceptions.").

In summary, Plaintiff's allegations concerning imminent danger are vague and conclusory, and Plaintiff has failed to allege facts to show the requisite nexus between any alleged danger and the Defendants named in this action. Therefore, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the civil action filing fees, which total $402.00. When Plaintiff pays his filing fees, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff does not pay the filing fees within the 28-day period, this case will be dismissed without prejudice, but Plaintiff will continue to be responsible for payment of the $402.00 filing fees.

Dated:     May 5, 2023                             /s/ Jane M. Beckering
                                                  Jane M. Beckering
                                                  United States District Judge

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:

Clerk, U.S. District Court
399 Federal Bldg.
110 Michigan St., N.W.
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**